# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH WAYNE SEKERKE, Booking No. 18165284,<br><br>         Plaintiff,<br><br>vs.<br><br>SAN DIEGO COUNTY SHERIFF DEPUTIES DANE OLSEN, ADAM ARKWRIGHT and MIKE LAWSON,<br><br>         Defendants. | Case No.: 20cv1045-GPC (RBB)<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]; AND**<br><br>**2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A(b)** |

  Plaintiff Keith Wayne Sekerke has filed this civil rights action under 42 U.S.C. § 1983 against San Diego County Sheriff Deputies Olsen, Arkwright and Lawson claiming he was subjected to cruel and unusual punishment in violation of the Eighth Amendment by the conditions of confinement in disciplinary segregation at the San Diego Central Jail. (ECF No. 1 at 3-10.)  He alleges his placement there was based on false charges brought by Defendant Olsen, that Defendants Arkwright and Lawson retained him there without due process, and that he did not eat for three days when Defendant Lawson restricted his diet. (*Id.*)  Plaintiff has also filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). (ECF No. 2.)

## I.  Motion to Proceed In Forma Pauperis

All parties instituting any civil action, suit or proceeding in a district court of the United States must pay a filing fee. See 28 U.S.C. § 1914(a).[1] The action may proceed despite a failure to prepay the entire fee only if the plaintiff is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). Because Plaintiff is a prisoner, even if he is granted leave to proceed IFP he will remain obligated to pay the entire $350 filing fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. ___, ___, 136 S.Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. See 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. See 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. See 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

2

In support of his IFP Motion, Plaintiff has submitted a prison certificate authorized by a Sheriff's Detention Lieutenant at SDCJ attesting to his trust account activity. (ECF No. 2 at 4.) The certificate shows that while Plaintiff had an average monthly deposit of $217.51, he carried an average monthly balance of $0 over the 6-month period preceding the filing of his Complaint and had no money on account at the time of filing. (*Id.*).

Based on this accounting, the Court assesses no initial partial filing fee pursuant to 28 U.S.C. § 1915(a)(1) and (b)(1) because Plaintiff appears currently unable to pay one. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.")

Accordingly, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2), declines to exact any initial filing fee because his SDCJ certificate shows he may have "no means to pay it," *Bruce*, 136 S. Ct. at 629, and directs the Facility Commander at SDCJ, or their designee, to collect the entire $350 balance of the filing fee required by 28 U.S.C. § 1914 and forward payments to the Clerk of the Court pursuant to the installment provisions set forth in 28 U.S.C. § 1915(b)(1).

## II.     Screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A

### A.     Standard of Review

Because Petitioner is a prisoner and is proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### B. Plaintiff's Allegations

Plaintiff is currently housed at the San Diego Central Jail and was during the events alleged in the Complaint. (ECF No. 1 at 1.) He alleges that on July 7, 2019, six days after the United States Marshal served an unrelated 42 U.S.C. § 1983 civil rights complaint, Defendant Deputy Sheriff Classification Officer Olsen, in "retaliation," came to his cell with four to five other Deputies "out of the blue" without a rules violation allegation and aggressively ordered him to submit to handcuffing. (*Id*. at 8.) He was taken to the Administrative Segregation Unit ("SHU") and placed in security confinement. (*Id*.) Plaintiff alleges Defendant Olsen fabricated an incident report falsely accusing him of "checking other inmates' criminal charges and making cell moves according to inmates' p.c. charges." (*Id*.) Plaintiff refers to and attaches the incident report to the Complaint as Exhibit A.[2] (*Id*. at 14-18.) It states he was placed in the SHU, with his placement to be

---

[2] In deciding whether Plaintiff has stated a plausible claim for relief, the Court may consider exhibits attached to his Complaint. *See* FED.R.CIV.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss).

reviewed every seven days, due to a report of manipulative and inappropriate behavior toward a mental health clinician, and because he has shown a continued failure to program in the mainline population based on his record of over 15 in-custody arrests and 55 rules violation reports while housed at the San Diego County Jail between 2003-2019. (*Id*.)

Plaintiff states he filed numerous administrative appeals "to no avail," during which he was interviewed by Defendant Deputy Sheriff Classification Sergeant Arkwright, who "acknowledged the inconsistencies (illegible)," but retained him in the SHU. (*Id*. at 8.) He alleges Defendant Deputy Sheriff Lawson "upheld my retention in" the SHU. (*Id*.)

Plaintiff describes the conditions in the SHU as containing human urine and feces on the floors, walls, and in the single shared shower, which created a horrible odor, placed there by mentally ill inmates. (*Id*. at 3.) He contends the inmates in the SHU constantly banged and stamped on their metal bunks and doors which made it impossible to sleep or concentrate sufficiently to read or write. (*Id*.) He filed numerous grievances and pleaded with the Deputies and mental health staff to stop it to no avail, and paid the other inmates to stop, which they did for a few hours at a time. (*Id*. at 3-4.) Plaintiff states his requests for cleaning supplies were denied, that he was occasionally wakened by a mentally ill inmate banging on his cell door speaking incoherently, and a mentally ill inmate once placed a newspaper with feces on it in Plaintiff's cell. (*Id*. at 4.)

Plaintiff states he was released from the SHU on an unstated date and returned on November 27, 2019. (*Id*. at 5.) When returned to the SHU, he states that multiple unnamed Deputies "grabbed my arm and bent my wrist forward in an excruciating[ly] painful angle," and placed him in a cell with dried feces on the floor, wall and ceiling. (*Id*.) He cleaned the floor himself with a paper towel, and was given soap and shampoo to clean with, but was not able to remove feces from the air vent which caused the odor of feces to permeate his cell. (*Id*.) The noise continued as before, which Plaintiff alleges is due to the jail placing mentally ill inmates in the SHU without adequate treatment. (*Id*.) He states that the mentally ill inmate in the cell next door banged on the wall so much he could not write on the desk in his own cell, and that same inmate went on a three-day manic episode which

did not allow Plaintiff to sleep for three days. (*Id*. at 6-7.) On February 12, 2020, Defendant Lawson placed Plaintiff "on a 3-day disciplinary seperation [sic] diet," which consisted of "two egg-roll sized pieces of inedible food for breakfast and dinner" without lunch. (*Id*. at 7.) Plaintiff did not eat for those three days, during which he told "the Deputies" that it was a violation of the Eighth Amendment to deprive a prisoner of food for 48 hours at a time. (*Id*.) He states he was finally released from the SHU on March 10, 2020. (*Id*.)

Plaintiff states that he is not bringing a retaliation claim against Defendant Olsen here because he is bringing that claim in a separate 42 U.S.C. § 1983 action he has pending in this Court, and merely includes the retaliation allegation here as background material. (*Id*. at 9, 11, citing So.Dist.Ca Civil Case No. 19cv0034-GPC (RBB).) He states that he is bringing an Eighth Amendment cruel and unusual punishment claim against all three Defendants based the conditions of confinement while in the SHU, including the three days he did not eat. (*Id*. at 9-10.)

C.   **42 U.S.C. § 1983**

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

D.   **Eighth Amendment Claim**

"[A] prison official violates the [Cruel and Unusual Punishments Clause of the] Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Second, Plaintiff must allege the prison official he seeks to hold liable had a "'sufficiently culpable state of mind' . . . [T]hat state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health and safety;" . . . he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Although it is unclear at this time whether Plaintiff is a pre-trial detainee or a state prisoner currently housed at the jail, the standards for a cruel and unusual punishment claim are the same for both types of inmates. *See Simmons v. Navajo County*, 609 F.3d 1011, 1017 (9th Cir. 2010), overruled in part on other grounds by *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc).

"When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) ("[W]hen determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff."); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (noting that § 1915(e)(2) "parallels the language of Federal Rule of Civil Procedure 12(b)(6)"). Under that standard, the factual allegations in the Complaint regarding the conditions Plaintiff was subjected to while housed in the SHU as to hygiene and lack of food and sleep, are sufficient to survive screening with respect to the "objectively, sufficiently serious" risk to Plaintiff's health and safety element of an Eighth Amendment claim. *Farmer,* 511 U.S. at 834; *see Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) ("Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care and personal safety. . . .The more basic the need, the shorter the time it can be withheld.")

The same is not true with respect to the subjective element of an Eighth Amendment claim. While the court has an obligation "where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit

of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985), it may not, in so doing, "supply essential elements of claims that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). The subjective element of an Eighth Amendment claim requires Plaintiff to allege the Defendants subjected him to the conditions in the SHU with a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to [his] health or safety." *Farmer*, 511 U.S. at 834. Plaintiff must allege facts from which the Court can find that he has plausibly alleged the Defendants knew of and deliberately disregarded an excessive risk to his health and safety. *Id*. at 837. He must allege facts showing the Defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and actually drew that inference. *Id*.

The allegations with respect to Defendant Arkwright involve only a review of Plaintiff's placement and retention in the SHU through the administrative appeals process. He alleges Defendant Arkwright interviewed him in connection to the administrative appeal process and "acknowledged the inconsistencies (illegible)," but retained him in the SHU. (ECF No. 1 at 8.) There are no allegations this Defendant knew of the conditions in the SHU, was aware of facts from which he could draw an inference Plaintiff was subject to conditions which posed a serious risk to his health or safety, that he actually drew such an inference, or that he deliberately disregarded a risk to Plaintiff's health and safety. The Complaint does not state a plausible Eighth Amendment claim with respect to Defendant Arkwright. *Iqbal,* 556 U.S. at 678.

The same is true as to Defendant Olsen. Plaintiff alleged Defendant Olsen initially placed him in the SHU in retaliation for being served with Plaintiff's other civil rights action, and then later fabricated an incident report which alleged Plaintiff had been making cell moves based on other inmates' criminal charges and discussing their criminal charges with him. (ECF No. 1 at 8.) The incident report attached to the Complaint as Exhibit A, which this Court may consider, *see supra* note 2, indicates Plaintiff's placement in the SHU was based on a complaint from his mental health clinician of manipulative and

inappropriate behavior by Plaintiff such that she could no longer professionally treat him. (ECF No. 1 at 16-17.)  In any case, the Complaint only alleges Defendant Olsen contrived to place Plaintiff in the SHU on a retaliatory pretext.  Plaintiff indicates he is currently pursing that First Amendment retaliation claim in another 42 U.S.C. § 1983 action he has pending in this Court, does not intend to present such a claim here, and merely includes the retaliation allegation in the Complaint as background for his Eighth Amendment claim. (*Id*. at 9, 11, citing So.Dist.Ca Civil Case No. 19cv0034-GPC (RBB).)  An allegation of the filing of false disciplinary charges by itself does not state a claim under 42 U.S.C. § 1983 because federal due process protections are contained in the ensuing disciplinary proceedings themselves.  *See Atherley v. Kernan*, 2020 WL 2079374, at *11 (S.D. Cal. Apr. 29, 2020).  In order to state an Eighth Amendment claim against Defendant Olsen, Plaintiff must plausibly allege he was aware of facts from which he could draw a reasonable inference that the conditions in the SHU posed a serious risk to Plaintiff's health and safety, that he actually drew such an inference, and deliberately disregarded that risk.  *Farmer*, 511 U.S. at 837.  The Complaint contains no allegations whatsoever regarding Defendant Olsen's awareness of the conditions in the SHU or how they impacted Plaintiff, and therefore no allegations which "state a claim for relief that is plausible on its face" with respect to an Eighth Amendment claim as to Defendant Olsen.  *Iqbal,* 556 U.S. at 678.  The "mere possibility of misconduct" falls short of meeting the *Iqbal* plausibility standard.  *Id*.; *see also Ivey*, 673 F.2d at 268 ("Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.")

With respect to Defendant Lawson, Plaintiff alleges that he placed Plaintiff "on a 3-day disciplinary seperation [sic] diet," which consisted of "two egg-roll sized pieces of inedible food for breakfast and dinner" without lunch. (*Id*. at 7.)  Plaintiff states he did not eat for those three days, during which he told "the Deputies" that it was a violation of the Eighth Amendment to deprive a prisoner of food for 48 hours at a time. (*Id*.)  Although Plaintiff alleges he informed "the Deputies" it was a violation to deprive him of food for 48 hours, he does not allege Defendant Lawson was one of those Deputies.  In any case,

he does not allege he informed the Deputies that he could not or was not eating the food, or allege facts from which a plausible inference could be drawn that Defendant Lawson knew of and deliberately disregarded Plaintiff's contention the food was inedible, and knew of and deliberately ignored Plaintiff not eating for three days.

Plaintiff attaches to the Complaint various administrative complaints and appeals he filed at the jail and responses thereto complaining that the manner of his placement into the SHU was unlawful or unauthorized and based on false charges. (*Id*. at 20-42.) There is a single passing reference to his cell when he first arrived in the SHU in a complaint letter he wrote to the Internal Affairs Unit of the Jail in which he states: "The cell was filthy, no toilet paper and no one would give me any. The cell was contaminated with feces and urine. No one on Team One would give me anything to clean with either." (*Id*. at 34.) Plaintiff identifies Defendant Lawson as a member of Team One. (*Id*.) However, that letter is addressed to the Internal Affairs Unit and primarily concerned his complaint that he should not have been placed in the SHU at all. Although it might plausibly be read as an indication Defendant Lawson worked in the SHU and was aware Plaintiff was placed in a cell in need of cleaning when he first arrived, the Court may not "supply essential elements of claims that were not initially pled." *Ivey*, 673 F.2d at 268. The subjective element of an Eighth Amendment claim is missing from the Complaint, which fails to contain factual allegations necessary to "state a claim to relief that is plausible on its face" that Defendant Lawson was aware of facts from which he could draw an inference that Plaintiff was subject to conditions which posed a serious risk to his health or safety. Even if the conditions in the SHU as described in the Complaint are by their nature sufficient to allow Defendant Lawson or the other Defendants to draw an inference the conditions posed a serious risk to the health or safety of any inmate in the SHU, assuming they were aware of those conditions by virtue of working in the SHU, Plaintiff must still allege facts which plausibly allege they *actually* drew such an inference and deliberately disregarded a serious risk to his health and safety. *Iqbal,* 556 U.S. at 678.

///

In sum, there are no allegations in the Complaint that Defendants were aware of the severity of the sanitation issues Plaintiff alleges, that they were aware he was unable to sleep due to the noise, or were aware his restrictive diet was inedible, and no allegations they were actually aware those conditions posed a serious risk to Plaintiff's health or safety, and, knowing of that risk, deliberately disregarded it.  To the extent Plaintiff intended to raise a claim based on the allegations of excessive use of force when his arm was twisted, he has not named as a Defendant anyone who was involved in that incident and as such has not stated a § 1983 claim based on that incident.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989) (holding that defendants may only be held liable if they personally "participated in or directed the violations, or knew of the violations and failed to act to prevent them.")  Accordingly, Plaintiff's Complaint fails to state a claim against any Defendant for a violation of the Eighth Amendment and is therefore subject to sua sponte dismissal with pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).  *See Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

### E. Leave to Amend

In light of Plaintiff's pro se status, the Court grants him leave to amend his pleading to attempt to sufficiently allege a § 1983 claim if possible.  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"), quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

### III. Conclusion and Orders

Good cause appearing, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **DIRECTS** the Facility Commander of SDCJ, or his designee, to collect from Plaintiff's trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding

month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on the Facility Commander, San Diego Central Jail, 1173 Front St., San Diego, California, 92101.

4. **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) and **GRANTS** Plaintiff thirty (30) days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc.*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.")

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")

**IT IS SO ORDERED**.

Dated: September 1, 2020

Hon. Gonzalo P. Curiel
United States District Judge