UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH WAYNE SEKERKE,<br><br>        Plaintiff,<br><br>   vs.<br><br>DANE OLSEN, Deputy Sheriff; ADAM ARKWRIGHT, Sheriff Lieutenant; MIKE LAWSON, Sheriff Sergeant; AGUIRRE, Deputy Sheriff, CHRIS CROSS, Deputy Sheriff,<br><br>        Defendants. | Case No.: 3:20-cv-01045-JO-RBB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO Fed. R. Civ. P. 12(b)(6)**<br><br>**[ECF No. 14]** |

   Plaintiff Keith Wayne Sekerke, proceeding pro se and in forma pauperis ("IFP") while incarcerated at the San Diego County Jail ("SDCJ") in June 2020, filed this civil rights action pursuant to 42 U.S.C. § 1983.[1]

---

[1] On July 23, 2021, Sekerke filed a Notice of Change of Address to Wasco State Prison. *See* ECF No. 19. According to the California Department of Corrections and Rehabilitation ("CDCR") Inmate Locator, Sekerke was admitted to CDCR custody on July 16, 2021, and is now incarcerated at Valley State Prison ("VSP") in Chowchilla. *See* https://inmatelocator.cdcr.ca.gov/Details.aspx?ID=BP1899 (last visited May 11, 2022). Sekerke has failed to file a subsequent notice of change of address, but the Court takes judicial notice of his current place of incarceration at VSP and will direct the Clerk to modify his return address

In his Amended Complaint ("Amend. Compl."), Sekerke alleges San Diego County Sheriff's Department Lt. Arkwright, and Deputy Sheriffs Aguirre and Cross ("Defendants") violated his right be free from "cruel and unusual punishment" between July 7, 2019 and July 2020, by subjecting him to "deplorable conditions" of confinement in the SDCJ's Administrative Segregation Unit ("Ad-Seg"). *See* ECF No. 8 at 2–7.  Sekerke seeks injunctive relief as well and general and punitive damages. *Id.* at 9.[2]

## I.      OVERVIEW

Defendants move to dismiss arguing Sekerke's Amended Complaint fails to comply with Federal Rule of Civil Procedure 8(a) and fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Defs.' Mem. of P&As in Supp. of Mot. to Dismiss ("Defs.' P&As"), ECF No. 14 at 12–24. Defendants further seek dismissal on grounds that Sekerke is an "unsuccessful serial litigant" and is proceeding IFP "in violation of 28 U.S.C. § 1915(g)," *id.* at 28–30; argue that to the extent Sekerke "purport[s] to challenge his placement in Administrative Segregation," his claims amount to impermissible "claim splitting," *id.* at 24–28; and request that the Court strike Sekerke's prayer for $100,000 in punitive damages as "immaterial, scandalous, and impertinent" pursuant to Fed. R. Civ. P. 12(f). *Id.* at 30–31. Sekerke has filed a 2-page

---

in CM/ECF to ensure he receives all subsequent filings and Orders. *See United States v. Basher*, 629 F.3d 1161, 1165 (9th Cir. 2011) (taking judicial notice of Bureau of Prisons' inmate locator available to the public); *see also Pacheco v. Diaz*, 2019 WL 5073594 at *2 (E.D. Cal. Sept. 4, 2019) (taking judicial notice of CDCR's Inmate Locator system); *McCoy v. Le*, No. 3:21-CV-1755-BAS-LL, 2021 WL 5449004, at *1 (S.D. Cal. Nov. 22, 2021) (same). Sekerke is reminded, however, that it his responsibility to keep the Court and all Defendants apprised as to address should he be transferred again or released from CDCR custody. *See* S.D. Cal. CivLR 83.11(b) ("A party proceeding pro se must keep the court and opposing parties advised as to current address.").

[2]  Because Sekerke has been transferred from County custody and committed to the California Department of Corrections and Rehabilitation since he filed suit, *see* ECF No. 19, his claims for injunctive relief with respect to the conditions under which he was housed at the SDCJ are moot. *See Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding that claims for injunctive relief "relating to [a prison's] policies are moot" when a prisoner has been moved and "has demonstrated no reasonable expectation of returning to [the prison]"); *Andrews v. Cervantes*, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007).

Response "oppos[ing] the defendants['] motion in its entirety," *see* ECF No. 17 ("Opp'n"), to which Defendants later filed a Reply. *See* ECF No. 18. For the reasons discussed, the Court grants in part and denies in part Defendants' motion to dismiss (ECF No. 14).

## II.    BACKGROUND

Because Defendants' motion depends in part on Sekerke's "serial" litigation history and a related civil action still pending before this Court, *Sekerke v. Leon, et al.*, 3:19-cv-00034-JO-RBB ("*Sekerke I*"), the Court first summarizes, for purposes of clarity, the procedural postures and claims at issue in both his current cases.

**A.    *Sekerke v. Leon*, et al., 3:19-cv-00034-JO-RBB ("*Sekerke I*")**

In his original Complaint in *Sekerke I*, filed on January 7, 2019, Sekerke claimed a SDCJ doctor (Leon) and two nurse practitioners (Avelino and Gatan) refused him access to prescription medications on three separate occasions in May, August, and October 2018. *See Sekerke I*, Compl., ECF No. 1 at 2–3. After his Complaint was dismissed for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A, Sekerke filed an Amended Complaint, omitting his previous claims against Avelino and Gatan, renaming Dr. Leon, and adding San Diego County Sheriff William Gore, and SDCJ Chief Medical Officer Mark O'Brien as Defendants. *See id,* Amend. Compl., ECF No. 7 at 1–2. In this pleading, Sekerke expanded his previous medical care claims and alleged Leon, Gore, and O'Brien refused to prescribe him necessary medication pursuant to a "blanket" County policy prohibiting narcotics, and failed to treat a MRSA infection. *Id.* at 3–17. Upon initial review, the Court found Sekerke's Amended Complaint sufficient to survive the screening threshold required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and directed the U.S. Marshal to effect service upon Leon, Gore, and O'Brien. *See id*., ECF No. 8 at 3–5 (citing *Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012)). After Sekerke served his Amended Complaint on Defendants Leon, O'Brien, and Gore, he was granted leave to file a Second Amended Complaint realleging his "individualized inadequate medical treatment [claims] against [] Dr. Leon and Deputy O'Brien between October and November 2018; [his] individualized claim against [Dr. Jon] Montgomery for his enforcement of the 'no narcotic'

policy; [his] personal injury claim against Dr. Leon; [his] related claim against San Diego County[,]" *and* an additional claim for retaliation against San Diego Sheriff Deputy D. Olsen, related to his placement in Administrative Segregation ("Ad-Seg") on or about July 7, 2019. *See id.*, ECF No. 53 at 9–11; 13–14.

On February 10, 2020, Sekerke filed his Second Amended Complaint against Leon, Montgomery, O'Brien, Olsen, and the County of San Diego. *See id.*, ECF No. 54. In it, Sekerke alleged that in addition to his inadequate medical care claims, Deputy Olsen "came to [his] cell" on July 7, 2019, "one week following the service of [his] original complaint" against Defendants Leon, Gore, and O'Brien, handcuffed him, and "took him to the hole (administrative segregation) without any rule violation." *See id.* at 10. Sekerke alleged Olsen "filed some fabricated accusations to hold [him] in administrative segregation" in order to retaliate against him for having filed suit. *Id.* After considerable delay and difficulty in effecting proper service upon the newly added Defendants, the Court eventually granted Defendants' motions to dismiss portions of Sekerke's Second Amended Complaint. *See Sekerke I*, ECF Nos. 53, 68, 126. Specifically, as related to this case, on March 25, 2021, the Court dismissed Sekerke's First Amendment retaliation claims against Deputy Olsen as alleged in Count 6 because they failed to state a plausible claim for relief. *See id.*, ECF No. 126 at 14–16. The currently pending claims in *Sekerke I*, comprised only of inadequate medical care and state law claims against the County of San Diego and Dr. Leon, remain before the Court, but subject to a pending motion for summary judgment pursuant to Fed. R. Civ. P. 56 which will be addressed in a separate Order. *See id.*, ECF No. 146.

**B.    *Sekerke v. Olsen, et al.*, 3:20-cv-01045-JO-RBB ("*Sekerke II*")**

On June 5, 2020, and while *Sekerke I* remained in its pleading stages, Sekerke filed this case—a new and separate civil rights action pursuant to 42 U.S.C. § 1983. *See* Compl., ECF No. 1. Sekerke named Lt. Arkwright, as well as San Diego County Sheriff's

Department Deputies Dane Olsen[3] and Mike Lawson as parties. *See id.* at 1–2. Sekerke expressly made clear, however, that he was "not seeking relief for a retaliation claim v. Dane Olsen," and was instead seeking to challenge his "placement in Ad-Seg" on July 7, 2019, and the "conditions [he] suffered through" while housed there from July 7, 2019, through February 12, 2020, on grounds that they violated his right to be free from "cruel and unusual punishment." *See id.* at 1, 9. Sekerke maintained that he sought to pursue the "the same [Eighth Amendment] claims" against both Defendants Olsen and Lt. Adam Arkwright. *Id.* at 9.

On September 20, 2020, the Court granted Sekerke's request to proceed IFP, but dismissed his Complaint against Arkwright, Olsen, and Lawson sua sponte for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and granted him leave to amend. *See* ECF No. 4 at 11–12. Sekerke's Amended Complaint, filed on October 21, 2020, and now the operative pleading, renames Lt. Arkwright and adds Sheriff's Deputies Aguirre and Cross as parties; but it does *not* rename or reallege any claims for relief against Olsen or Lawson. *See* Amend. Compl. at 1–3.[4]

/ / /

---

[3] Because Sekerke's original Complaint included claims related to the same initial incident—his placement in Administrative Segregation on July 7, 2019—and he named Deputy Olsen, who was at the time still a named Defendant in *Sekerke I*, the two cases were identified as sufficiently related to justify a "Low Number Rule" transfer. *See* ECF No. 3; S.D. CivLR 40.1.i ("In order to avoid unnecessary duplication of judicial effort, all pending civil actions and proceedings, which are determined to be related to any other pending civil action or proceeding pursuant to the criteria set forth in Civil Local Rule 40.1.e will be assigned to the district and magistrate judge to whom the lowest numbered case was assigned…."). Local Rule 40.1.e does not require that cases or claims be identical. But in Sekerke's cases, transfer was found appropriate because *Sekerke I* and his original Complaint in *Sekerke II* "(1) ar[o]se form the same or substantially identical transactions, happenings, or events; (2) involve[d] the same or substantially the same parties or property," and potentially "(4) call[ed] for determination of the same or substantially identical questions of law." *See* ECF No. 3.

[4] Claims dismissed with leave to amend not realleged in an amended pleading are considered waived if not repled. *See Lacey v. Maricopa*, 693 F.3d 896, 928 (9th Cir. 2012); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.    STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12 (b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, at a minimum, a complaint must allege enough facts to provide "fair notice" of both the particular claims being asserted and "the grounds upon which [those claims] rest[ ]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007) (citations omitted).

In deciding a motion to dismiss, all material factual allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). A court, however, need not accept all conclusory allegations as true. Rather it must "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 115, 1121 (9th Cir. 1992). A motion to dismiss should be granted if a plaintiff's complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). A pro se plaintiff's complaint must be construed liberally to determine whether a claim has been stated. *See Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001). However, a pro se litigant's pleading still must meet some minimum threshold in providing the defendants with notice of what it is that they allegedly did wrong. *See Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).

/ / /

/ / /

3:20-cv-01045-JO-RBB

# IV.   DISCUSSION

Defendants advance several arguments in seeking to dismiss and strike portions of Sekerke's Amended Complaint. They argue: (A) he has not met Rule 8's pleading standards; *see* Defs' P&As at 13; (B) he has not validly alleged official capacity claims against any Defendant; *id.* at 15; (C) he has not sufficiently alleged Sgt. Arkwright was personally involved; *id.* at 20–21; (D) he has not sufficiently alleged Arkwright violated his constitutional rights with respect to the conditions of his confinement; *id.* at 21–23; (E) his disciplinary diet claims against Deputies Cross and Aguirre fail to state a plausible Eighth Amendment claim for relief; *id.* at 17–19; (F) his failure to protect claim against Arkwright also fails to state a viable Eighth Amendment violation; *id.* at 23–24; (G) his claims in *Serkerke I* and this case are duplicative; *id.* at 24–28; (H) he is proceeding in IFP in violation of 28 U.S.C. § 1915(g); *id.* at 28–30; and (I) his prayer for punitive damages is immaterial, impertinent, and scandalous. *Id.* at 30–31. The Court will address each of these arguments in turn.

## A.   Sekerke Has Satisfied Rule 8's Pleading Requirements

Defendants first seek to dismiss Sekerke's Amended Complaint pursuant to Rule 8 because "it is not clear what legal theories [Sekerke] intends to pursue," and they are left to "guess" as to whether "this is a due process, failure to protect, conditions of confinement, or some other type of case." *See* Defs.' P&As at 13.

"To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). "Notice pleading requires the plaintiff to set forth in his complaint claims for relief, not causes of action, statutes or legal theories." *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) (citing Fed. R. Civ. P. 8(a)(2)). "A dismissal for a violation under Rule 8(a)(2), is usually confined to instances in which the complaint is so 'verbose, confused and redundant that its true substance, if any, is well disguised." *Hearns v. San*

*Bernardino Police Dept.*, 530 F.3d 1124, 1131–32 (9th Cir. 2008) (internal citations omitted)).

Here, while Sekerke's pleading is not a model of clarity, it is also not necessarily unintelligible or incoherent. *See id.* at 1132. For example, Sekerke identifies statutory and constitutional sources for his claims by specifically citing 42 U.S.C. § 1983 and invoking his right to be free from "cruel and unusual punishment." *See* Amend. Compl. at 2, 4, 6, 7. He clearly identifies Lt. Arkwright and Deputies Aguirre and Cross as the persons who violated these rights and further enumerates the various ways these Defendants did so: (1) by exposing him to "deplorable conditions inside Ad-Seg" from July 2019 through July 2020; (2) by failing to prevent him from being gassed by a mentally ill inmate after he was released to a "regular" housing unit; and (3) by serving him inedible food for three days in February 2020. *See id.* at 2–3, 4–7.

Thus, because Sekerke's Amended Complaint is sufficient to provide the minimal "fair notice" required by Rule 8, the Court denies Defendants' motion to dismiss on this ground. The Court turns instead to consider whether Sekerke's allegations are sufficient to meet Rule 12(b)(6) standards.

**B.     Sekerke's Official Capacity Claims Fail**

To the extent that Sekerke is seeking to sue the Defendants in their official capacities, Defendants argue his claims fail because he has not alleged that the County of San Diego or its Sheriff's Department, as opposed to the individually-named officers, violated his rights. *See* Defs.' P&As at 15; Amend. Compl. at 2–3.

"[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011). In order to plead an official capacity claim against Defendants, Sekerke must allege that the "municipality's policy or custom caused a violation of [his] constitutional rights." *Ass'n for L.A. Deputy Sheriffs v. Cnty. of Los Angeles*, 648 F.3d 986, 992–93 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 690–91). In

other words, his pleading must contain "factual content" sufficient to plausibly show "(1) [he] was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [his] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020); *Iqbal*, 556 U.S. at 678.

The Court will therefore examine whether Sekerke has alleged that the actions he complains of were implemented pursuant to a policy or custom of the San Diego Sherriff's Department. In his Amended Complaint, Sekerke alleges Defendants violated his constitutional right to be free from "cruel and unusual punishment" with respect to various conditions of his confinement while he was housed in Ad-Seg and after. *See* Amend. Compl. at 4, 6, 7. He also contends Lt. Arkwright is "in charge of classification and the jail population management unit (JPMU) as well as Ad-Seg," and broadly claims the conditions under which he was housed there together with "severely mentally ill inmates" violate "the rights of both groups." *Id.* at 4, 7. However, nothing in Sekerke's operative pleading plausibly suggests Arkwright, Aguirre, or Cross acted pursuant to any identified municipal policy, custom, or practice. *Monell*, 436 U.S. at 690–91; *Lockett*, 977 F.3d at 740. Because he has not pled any such official policy or custom on the part of the County of San Diego Sheriff's Department, Sekerke's official capacity claims against the Defendants fail. The Court, therefore, grants Defendants' motion to dismiss Sekerke's official capacity claims pursuant to Fed. R. Civ. P. 12(b)(6).

## C.   Sekerke Sufficiently Alleges Arkwright's Personal Liability

In Count 1 of his Amended Complaint, Plaintiff alleges Sgt. Arkwright "is responsible for his placement and retention of each inmate in Ad-Seg," and that his refusal to "make any changes" constitutes cruel and unusual punishment. *See* Amend. Compl. at 4–5. Arkwright seeks dismissal of Count 1 on the ground that Plaintiff fails to plausibly show Arkwright was personally involved in the alleged unconstitutional activity. *See* Defs' P&As at 20–21.

/ / /

"An official is liable under § 1983 only if 'culpable action, or inaction, is directly attributed to them.'" *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019) (quoting *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011)). Thus, to establish individual liability, Sekerke must plead factual content sufficient to plausibly show direct, personal participation of the official in the harm he alleges to have suffered or some sufficient causal connection between the Defendant's conduct and the alleged constitutional violation. *Starr*, 652 F.3d at 1205–07; *see also Iqbal*, 556 U.S. at 676. "'A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Starr*, 652 F.3d at 1207 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)) (internal alteration and quotation marks omitted)).

The Court disagrees with Defendants' contention that Sekerke's claims against Arkwright are premised only on his role as a supervisor. Sekerke alleges he was placed in Ad-Seg on July 7, 2019, and "subsequently filed jail grievances to appeal [his] placement … and [to] complain about the deplorable conditions" there. *See* Amend. Compl. at 4. He claims Lt. Arkwright is "in charge of classification[,] the jail population management unit (JPMU) as well as Ad-Seg," and that Arkwright interviewed him "about 2 weeks later." *Id.* at 4, 5. Sekerke further contends that when he complained "to Lt. Arkwright[,] [he] said that he is not going to make any changes." *Id.* at 4. Thus, While Defendants are correct to note that Sekerke "must allege facts, not simply conclusions, that show an individual was personally involved in the deprivation of his civil rights," *see* Defs.' P&As at 20 (quoting *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998)); *see also Iqbal*, 556 U.S. at 676, the Court finds Sekerke's allegations sufficient to plausibly show that Arkwright was made personally aware of the general conditions in Ad-Seg, and yet failed or affirmatively refused to take any action with respect to Sekerke's complaints. *See Starr*, 652 F.3d at 1207. Because Sekerke's claims are premised on Lt. Arkwright's own "culpable action or inaction" with respect to the conditions under which Sekerke was confined, the Court

denies the request to dismiss them for lack of personal involvement. *See Iqbal*, 556 U.S. at 676; *Starr*, 652 F.3d at 1207.

### D. Sekerke Sufficiently Alleges Unconstitutional Conditions of Ad-Seg Confinement Claims against Arkwright

Defendants next seek dismissal of Sekerke's Ad-Seg conditions of confinement claims on grounds that they do not rise to the level of an Eighth Amendment violation. *See* Defs.' P&As at 21–23.

For persons "convicted and awaiting sentence," the Eighth Amendment's prohibition of cruel and unusual punishment governs. *See Norbert v. City & Cnty. of San Francisco*, 10 F.4th 918, 927 (9th Cir. 2021). Conditions claims raised by pretrial detainees, on the other hand, are analyzed under the Fourteenth Amendment Due Process Clause, rather than the Eighth Amendment. *Id.* at 928. Because it appears Sekerke may have been a pretrial detainee at least during the first month of his stay in Ad-Seg,[5] the Court will analyze his claims under both Eighth and Fourteenth Amendment principles depending upon the time those violations are alleged to have occurred.

The Constitution "does not mandate comfortable prisons[.]" *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Conditions of confinement "may be, and often are, restrictive and harsh[.]" *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing *Rhodes*, 452 U.S. at 347). And "[n]ot every disability imposed during pretrial detention constitutes 'punishment' in the constitutional sense." *Bell v. Wolfish*, 441 U.S. 520, 537 (1979). However, both the Eighth and the Fourteenth Amendments impose duties on prison or jail officials to "provide humane conditions of confinement[,] ... ensure that inmates receive

---

[5] Sekerke claims Arkwright violated his right to be free from "cruel and unusual punishment" by subjecting him to "deplorable conditions" from July 7, 2019, through March 2020, *see* Amend. Compl. at 4, but he appears to have been a pretrial detainee until sometime in August 2019 when he was convicted on four counts of robbery, vehicle theft, attempted extortion, and burglary in San Diego Superior Court Case Nos. SCS304221 and SCS305297. *See Sekerke v. Gore*, S.D. Cal. Civil Case No. 3:20-cv-01998-JLS-MSB, ECF No. 1 at 1; *Sekerke I*, S.D. Cal. Civil Case No. 3:19-cv-00034-JO-RBB, ECF No. 146-2 at 137, 164.

adequate food, clothing, shelter, and medical care, and . . . 'take reasonable measures to guarantee the[ir] safety.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted); *see also Alvarez-Machain v. United States,* 107 F.3d 696, 701 (9th Cir. 1996) ("Pretrial detainees are entitled to 'adequate food, clothing, shelter, sanitation, medical care, and personal safety.'") (quoting *Hoptowit v. Ray*, 682, F.2d 1237, 1246 (9th Cir. 1982)), *overruled on other grounds as noted in Marley v. United States*, 548 F.3d 1286 (9th Cir. 2008).

Deprivation of these "life[] necessities" must be "sufficiently grave" in order to form the objective basis for either an Eighth or a Fourteenth Amendment violation. *See Farmer*, 511 U.S. at 834; *Vasquez v. Cnty of Kern*, 949 F.3d 1153, 1163 (9th Cir. 2020) (noting that the harm or disability suffered by a pretrial detainee "must either significantly exceed, or be independent of, the inherent discomforts of confinement.") (citing *Demery v. Arpaio*, 378 F.3d 1020, 1030 (9th Cir. 2004)). Both the Eighth and Fourteenth Amendments also require a plaintiff to show the defendant acted with "deliberate indifference," but the standards for pleading that indifference vary under the respective Amendments. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016).

Under the Eighth Amendment, deliberate indifference includes a subjective component: a prisoner must allege facts sufficient to plausibly show the defendant actually knew and consciously disregarded an "excessive risk to [his] health or safety." *Farmer,* 511 U.S. at 834, 837; *Norbert,* 10 F.4th at 934. Under the Fourteenth, however, a detainee need not allege the defendant harbored a subjective intent to punish. *See Castro*, 833 F.3d at 1070. Instead, deliberate indifference is measured by an "objective framework" and plaintiff need only allege "more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* at 1071; *Norbert*, 10 F.4th at 928.

Sekerke has alleged facts in Count 1 sufficient to state a plausible claim for relief against Lt. Arkwright regardless of whether his conditions claim arise under the Eighth or the Fourteenth Amendment. Specifically, Sekerke contends he was confined to Ad-Seg from July 7, 2019 through March 2020, and during those nine months was exposed to a

host of "deplorable conditions" that pervaded throughout the entire Ad-Seg Unit and within his individual cell. *See* Amend. Compl. at 4. Sekerke claims that throughout the unit, feces were "spread among the tiers, walls[,] and showers," and never adequately or fully cleaned. *See* Amend. Compl. at 4. Sekerke further alleges the odor was "horrible," and that other "severely mentally ill inmates" who were also housed within the unit "bang[ed] on metal sinks, desks, and bunks," "for hours on end," made noise so loud it could "be heard from other floors," and that he could not "sleep, think, read [or] concentrate," except for the one hour he was permitted outside his cell each day. *Id.* at 4–5. Inside his own cell and under his bunk, Sekerke contends "there was dried feces covering the air vent," and "dried feces on the ceiling which [he] was never able to reach. *Id.* Sekerke further claims that dried feces once fell off the wall and hit him in the head, and that from February 15 through 18, 2020, an inmate in the cell next to him refused anti-psychotic medication, became manic, banged his bunk and door, and prevented Sekerke from sleeping for "four days straight." *Id.* at 5. The same inmate "placed feces onto a newspaper and slid it under [Sekerke's] door during his 'hour out.'" *Id.*

These conditions claims are sufficient to plausibly show both that Sekerke suffered some harm with respect to the lack of proper sanitation and noise in Ad-Seg that exceeded the "inherent discomforts of confinement" required by the Fourteenth Amendment, *see Vasquez*, 949 F.3d at 1163; *Demery*, 378 F.3d at 1030, and that the deprivations he alleges to have suffered as a result of those conditions were objectively and "sufficiently serious" as required by the Eighth Amendment. *See Farmer*, 511 U.S. at 834; *Anderson v. Cnty of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995) ("[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment."); *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996) ("[P]ublic conception of decency inherent in the Eighth Amendment require that [inmates] be housed in an environment that, if not quiet, is at least reasonably free of excessive noise."); *Rico v. Ducart*, 980 F.3d 1292, 1298 (9th Cir. 2020) (noting that "[e]xisting [Eighth Amendment] precedent does recognize general rights against excess noise and prison

conditions that deprive inmates of 'identifiable human need[s],' such as sleep.") (emphasis and citation omitted).

Sekerke's allegations against Lt. Arkwright with respect to the conditions of his confinement as alleged in Count 1 are also sufficient to satisfy both the objective and subjective deliberate indifference standards required to support a plausible Eighth or Fourteenth Amendment claim for relief. *See Norbert*, 10 F.4th at 928 (citing *Farmer*, 511 U.S. at 834, 837); *Castro*, 833 F.3d at 1071.

As noted previously, Sekerke alleges Arkwright "is responsible for the placement and retention of each inmate in Ad-Seg and other housing," and that he "filed jail grievances to appeal [his] placement in Ad-Seg, and [to] complain about the deplorable conditions inside." *See* Amend. Compl. at 4. Sekerke claims Arkwright was actually aware of his plight because he personally interviewed him approximately two weeks after he was placed in Ad-Seg on July 7, 2019. *Id.* Sekerke further contends Arkwright remained aware of the conditions in Ad-Seg "for at least 2 years," and yet affirmatively "refuse[d] to make any changes." *See* Amend. Compl. at 5. These allegations plausibly show Arkwright's subjective deliberate indifference to a substantial risk of serious harm and his failure to take "reasonable measures to abate the risk" in contravention of the Eighth Amendment. *Farmer*, 511 U.S. at 847; *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (prison officials' awareness of serious risk of harm "may be satisfied if the inmate shows that the risk posed by the deprivation is obvious"); *Starr*, 652 F.3d at 1208 (""[A]cquiescence or culpable indifference' may suffice to show that a supervisor 'personally played a role in the alleged constitutional violations.'") (quoting *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005)); *see also Bhimji v. Bowman*, No. 2:19-CV-04502-GW-JC, 2020 WL 8258386, at *6 (C.D. Cal. Nov. 29, 2020) (finding allegations that supervisor failed to address prisoner's reports of bird defecation on dining seats, tables, walls, food service line and dining hall furnishings sufficient to state a claim of deliberate indifference under the Eighth Amendment), *report and recommendation adopted*, 2021 WL 230037 (C.D. Cal. Jan. 14, 2021); *cf. Venegas v. Cnty. of Riverside*, No. 5:20-CV-01359-JLS-SHK, 2021 WL

6102503, at *13 (C.D. Cal. Oct. 7, 2021) (finding no subjective deliberate indifference under Eighth Amendment where inmate complained about unsanitary cell conditions, but Defendant responded by "submitting a work order to remedy the issues."); *and Nowlin v. Carvajal*, No. 5:21-CV-01411-JGB-JDE, 2021 WL 5911665, at *6 (C.D. Cal. Oct. 15, 2021), *report and recommendation adopted*, 2021 WL 5908842 (C.D. Cal. Dec. 13, 2021) (finding no deliberate indifference to serious risk of infection where Plaintiff sufficiently alleged Defendants were aware of and understood the potential risk of serious harm posed to inmates but also "took numerous steps to reduce the serious risks posed by COVID-19, including lockdowns; limiting inmate transfers and inmate movement; implementing screening, quarantine, and isolation procedures; modifying operations to maximize social distancing; limiting group gatherings; providing masks; and increasing sanitation efforts.").

Sekerke's allegations also plausibly suggest Arkwright's "decision to bring about (or allow)" his 23-hour a day exposure to excessive noise and human waste in Ad-Seg while housed together with "severely mentally ill inmates," *see* Amend. Compl. at 4–5, "was objectively unreasonable in light of the risk those conditions posed," *Herrera v. Los Angeles Unified Sch. Dist.*, 18 F.4th 1156, 1160 (9th Cir. 2021), and thus, sufficient to plausibly show Arkwright's "reckless disregard" under the Fourteenth Amendment. *See Castro*, 833 F.3d at 1071; *Norbert*, 10 F.4th at 928; *Iqbal*, 556 U.S. at 678.

For these reasons, the Court denies Defendants' motion to dismiss Sekerke's cruel and unusual conditions of confinement claims as alleged in Count 1 against Lt. Arkwright.

**E.    Sekerke's Disciplinary Diet Claims Fail**

Defendants further seek dismissal of Sekerke's disciplinary diet claims against Deputies Aguirre and Cross as alleged in Count 2 on grounds that they fail to plausibly allege any Eighth Amendment violation. *See* Defs. P&As at 16–20.

Eighth Amendment principles govern this claim because Sekerke alleges to have been placed on a "disciplinary separation diet" only for three days beginning on February 11, 2020, six months after he was convicted. *See* Amend. Compl. at 6; *Sekerke v. Gore*,

S.D. Cal. Civil Case No. 3:20-cv-01998-JLS-MSB, ECF No. 1 at 1; *Sekerke I,* ECF No. 146-2 at 137, 164.

The Eighth Amendment "'requires only that prisoners receive food that is adequate to maintain health.'" *Foster v. Runnels*, 554 F.3d 807, 813 n.2 (9th Cir. 2009) (quoting *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993)); *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1259–60 (9th Cir. 2016) (affirming district court's grant of summary judgment on plaintiff's nutrition claim where plaintiff presented no evidence that the food she received was moldy, inedible, or inadequate under the United States Department of Agriculture's recommended caloric intake and failed to show or even allege that the food she received left her or her baby in poor health). A prisoner's diet need not be "tasty or aesthetically pleasing." *LeMaire*, 12 F.3d at 1456 (citations omitted). However, the "repeated and unjustified failure" to provide adequate sustenance can "'amount[] to a serious depr[i]vation'" in violation of the Eighth Amendment. *Mendiola-Martinez*, 836 F.3d at 1259 (quoting *Foster*, 554 F.3d at 814). "The sustained deprivation of food can be cruel and unusual punishment when it results in pain without any penological purpose." *Foster*, 554 F.3d at 814 (citation omitted).

Sekerke alleges Deputy Cross "took all his food and even [his] coffee" on February 11, 2020, at Sgt. Lawson's instruction, "because [he] was being placed on [a] 'Disciplinary Separation Diet.'" *See* Amend. Compl. at 6.[6] Sekerke does not explain why this disciplinary sanction was imposed, and thus does not allege it lacked any penological

---

[6] Defendants argue "to the extent [Sekerke] is alleging that removing … items from his cell was itself a constitutional violation, … [he] fails to state a claim against [Deputy] Cross." *See* Defs.'s P&As at 20. Prisoners have a protected interest in their personal property. *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). However, due process is not violated by a random, unauthorized deprivation of property if the state provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). California's tort claim process "provides an adequate post-deprivation remedy for any property deprivations." *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (per curiam) (citing Cal. Gov't Code §§ 810–95). Therefore, the Court agrees Sekerke has no plausible claim for relief based on the deprivation of personal items he alleges Deputy Cross removed from his cell on February 11, 2019, separate and apart from the Eighth Amendment violation he alleges against Cross and Aguirre related to his disciplinary diet in Count 2.

purpose. *See Foster*, 554 F.3d at 814. He contends only that as a result, Deputy Aguirre also "refused to provide [him] a lunch" on February 11, 2020, and instead served him a diet of "inedible" "black charred egg roll sized objects" for a 3-day period. *Id.*

The Court agrees these allegations are insufficient to support a plausible Eighth Amendment claim. *See LeMaire*, 12 F.3d at 1456 (concluding the use of a "Nutraloaf" in Oregon prison did not "rise to the threshold level of deprivation" of being sufficiently serious to state a claim under the Eighth Amendment). Similarly, Sekerke's claims that the food he was provided for a few days in February 2020 was "charred" and inedible, *see* Amend. Compl. at 6, without any further allegation to suggest it was inadequate to provide him necessary nutrition and/or to "maintain his health," does not rise to the level of a constitutional violation. *See LeMaire*, 12 F.3d at 1456 (prisoner's diet "need not be tasty or aesthetically pleasing"); *Mendiola-Martinez*, 836 F.3d at 1259; *Foster*, 554 F.3d at 814; *see also Venegas v. Bianco,* No. 5:19-CV-01557-JLS-SHK, 2020 WL 4334118, at *22 (C.D. Cal. Apr. 27, 2020) (finding prisoner's allegations of having been served a "substandard," "soggy," cold, and "inedible" disciplinary diet for 6 days failed state an Eighth Amendment claim).

Therefore, the Court grants Defendants' motion to dismiss Sekerke's claims against Deputies Cross and Aguirre as alleged in Count 2 because they fail to state a plausible claim for relief under the Eighth Amendment.[7]

**F.     Sekerke's Failure to Protect Claims Fail**

Defendants also argue Sekerke has failed to plead a plausible claim for relief against Lt. Arkwright with respect to the "gassing" incident he describes in Count 3. *See* Defs.'s P&As at 23–24.

/ / /

---

[7] Defendants summarily argue that Sekerke "does not allege that Lieutenant Arkwright ha[d] knowledge or involvement in the disciplinary diet." *See* Defs.' P&As at 24. The Court agrees; however, Sekerke does not mention Arkwright and does not seek to hold Arkwright liable under Count 2 at all. *See* Amend. Compl. at 6.

In addition to ensuring that prisoners like Sekerke receive "adequate food, clothing, shelter, and medical care," the Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of [] inmates," and to "protect [them] from violence at the hands of other prisoners.'" *Farmer*, 511 U.S. at 832, 833 (citations omitted); *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (noting that Eighth Amendment "has been interpreted to include a duty to protect prisoners."); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005); *Hoptowit,* 682 F.2d at 1237 ("Prison officials have a duty to take reasonable steps to protect inmates from physical abuse."), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). But like Sekerke's Ad-Seg conditions of confinement claim as alleged in Count 1, his Eighth Amendment failure to protect claim as alleged in Count 3 also require him to allege facts sufficient to show Lt. Arkwright acted with deliberate indifference to a serious risk of attack. *Farmer*, 511 U.S. at 837. *Farmer* defines this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." *Id.* at 836–37.

In Count 3, Sekerke alleges that on July 24, 2020, after he was released from Ad-Seg and assigned to a cell in the 7B module of the SDCJ, a "mentally ill inmate accessed [his] cell through the door's food port, opened it, and then gassed [sprayed] [him] with urine" he had saved in a shampoo bottle. *See* Amend. Compl. at 7. Sekerke alleges this too violates his right to be free from cruel and unusual punishment, and that Lt. Arkwright is "responsible" because he "houses severely mentally ill inmates with mentally healthy inmates in [the] 7A and 7B modules." *Id.*

Again, while Sekerke claims Lt. Arkwright personally interviewed him in response to his grievances regarding the "deplorable conditions" in Ad-Seg from July 7, 2019 through March 2020, and yet "refuse[d] to make any changes" in Count 1, *see* Amend. Compl. at 5, he fails to similarly allege Arkwright was actually aware of any specific or obvious risk that he would be "gassed" by a fellow inmate once released from Ad-Seg and re-housed in "regular housing" more than four months later in July 2020. *See* Amend.

Compl. at 7. Sekerke contends generally that he filed "dozens of grievances and talked to [Arkwright] and other staff" regarding the "hous[ing] [of] severely mentally ill inmates together with mentally healthy," *id.*, but he does not claim Arkwright actually knew or failed to act in the face of any obvious risk that he would be physically assaulted by any fellow inmate in the 7B housing module after he was released from Ad-Seg. *See Farmer*, 511 U.S. at 837, 844 ("[P]rison officials who lack[] knowledge of a risk cannot be said to have inflicted punishment" under the Eighth Amendment); *see also Labatad*, 714 F.3d at 1161 (finding no awareness of substantial risk of harm where prisoner alleged to have "told an … officer that he should not be housed with [another inmate], [b]ut … provided no specifics about this conversation[.]"); *Wood v. Beauclair*, 692 F.3d 1041, 1051 (9th Cir. 2012) (concluding that prison supervisors lacked knowledge of risk that plaintiff would be sexually assaulted in part because the prisoner "never disclosed [the sexual abuser's] actions to prison officials until long after the incidents at issue in this case occurred"); *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (while a prison official need not "believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault[,]" to be deliberately indifferent, the official must "have more than a mere suspicion that an attack will occur.").

For these reasons, the Court grants Defendants' motion to dismiss Sekerke's Eighth Amendment failure to protect claims against Lt. Arkwright as alleged in Count 3.

## G.  Sekerke's Claims are not Duplicative

Defendants next argue Sekerke's "allegations of improper placement and retention in Ad-Seg, the damages flowing from those events, and the requested injunction regarding retaliation are barred by the doctrine prohibiting claim splitting," and as a result "those allegations … should be dismissed or stricken." *See* Defs.' P&As at 24.

The doctrine against claim splitting provides that a party is "not at liberty to split up his demand, and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first

fail. There would be no end to litigation if such a practice were permissible." *United States v. Haytian Republic*, 154 U.S. 118, 125 (1894) (quoting *Stark v. Starr*, 94 U.S. 477, 482 (1876)). The "main purpose behind the rule preventing claim splitting is 'to protect the defendant from being harassed by repetitive actions based on the same claim.'" *Clements v. Airport Auth. of Washoe Cty*., 69 F.3d 321, 328 (9th Cir. 1995) (citation omitted). Plaintiffs "generally have 'no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.'" *Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 886 (9th Cir. 2022) (quoting *Adams v. Cal. Dep't of Health Servs*., 487 F.3d 684, 688 (9th Cir. 2007) (citations omitted), *abrogated on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008)). Therefore, courts have "broad discretion to control their dockets" and may exercise their discretion "to dismiss a duplicative later-filed action, to stay that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions." *Adams,* 487 F.3d at 688.

To determine whether a suit is duplicative, the Ninth Circuit borrows claim preclusion principles. *Id.*; *see also Adobe Sys. Inc. v. Wowza Media Sys., LLC*, 72 F. Supp. 3d 989, 994 (N.D. Cal. 2014) (describing claim splitting as "a sub-species of the doctrine of claim preclusion."). Courts "examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Adams*, 487 F.3d at 689. "To ascertain whether successive causes of action are the same, [courts] use the transaction test[.]" *Id.* "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Id.* Four criteria apply:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Id.* (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir. 1982)). "The 'most important' factor is 'whether the two suits arise out of the same transactional nucleus of facts.'" *Mendoza*, 2022 WL 1041182, at *5 (quoting *Adams*, 487 F.3d at 689); *Costantini,* 681 F.2d at 1202; *see also Hayes v. Rojas,* No. 1:20-CV-01820-NONE-JLT, 2021 WL 5356471, at *5 (E.D. Cal. Nov. 17, 2021) (analyzing claim splitting in context of pro se prisoner § 1983 case).

The Court disagrees with Defendants' contention that Sekerke's claims are duplicative of those previously alleged and dismissed in *Sekerke I*. In this case, Sekerke alleges Defendants Arkwright, Cross, and Aguirre violated his Eighth Amendment rights by exposing him to harsh Ad-Seg conditions from July 2019 through March 2020. *See* Amend. Compl. at 4–6. While somewhat related to his retaliation allegations in *Sekerke I*, the claims Sekerke seeks to pursue in this action are not the same.

For example, the First Amendment retaliation claims alleged against Olsen in Count 6 of Sekerke's Second Amended Complaint in *Sekerke I* are brief, conclusory, and do not include any challenge whatsoever regarding the conditions of his confinement in Ad-Seg during the year he alleges to have spent there in this case. *Compare* Amend. Compl. at 4–7 *with Sekerke I*, ECF No. 54 at 10. Nor does the retaliatory Ad-Seg placement claim alleged *Sekerke I* identify or involve any alleged misconduct on the part of Lt. Arkwright or Deputy Sheriffs Aguirre or Cross—the only Defendants currently named as parties in this case. *See* Amend. Compl. at 2–3. Thus, while Sekerke *did* originally include Deputy Olsen as a party in both cases, his claims against Olsen have already been dismissed during initial screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A. *See* ECF No. 4 at 8–9. Olsen is not renamed as a Defendant in Sekerke's operative Amended Complaint, and Sekerke realleges no conditions of confinement claim against Olsen whatsoever.

Accordingly, because Sekerke does *not* seek to challenge the infringement of the same right or seek relief against the same parties in *Sekerke I* as he does in this case, *see Adams*, 487 F.3d at 689, the Court denies Defendants' motion to dismiss on "claim splitting" grounds.

**H.      Sekerke's Claims are not Barred by 28 U.S.C. § 1915(g)**

Defendants next claim "dismissal is warranted because [Sekerke] is proceeding IFP in violation of 28 U.S.C. § 1915(g)." *See* Defs.' P&As at 28–30. Specifically, they ask the Court to take judicial notice of five prior complaints Sekerke filed in the Southern District of California and the Court's orders disposing of them before he filed his original Complaint and motion to proceed IFP on June 5, 2020, and dismiss this case "because he is not eligible for IFP status." *Id.* Essentially, Defendants seek to revoke this Court's September 4, 2020 Order granting Sekerke leave to proceed IFP.[8] *See* ECF No. 4.

"The Prison Litigation Reform Act (PLRA) instituted a 'three-strikes' rule in an effort to disincentivize frivolous prisoner litigation." *Hoffman v. Pulido*, 928 F.3d 1147, 1148-49 (9th Cir. 2019). "Once a prisoner has had three actions dismissed as frivolous or malicious, or for failure to state a claim upon which relief can be granted, that prisoner is no longer permitted to file an action in forma pauperis unless the prisoner is in imminent danger of serious physical injury." *Id.* at 1149 (citing 28 U.S.C. § 1915(g). The objective is to further "the congressional goal of reducing frivolous prisoner litigation in federal court." *Tierney v. Kupers*, 128 F.3d 1310, 1312 (9th Cir. 1997); *see also Jones v. Bock*, 549 U.S. 199, 203–04 (2007) (noting that Congress passed the PLRA to "reduce the quantity and improve the quality of prisoner suits.") (citation omitted).

"Strikes are prior cases or appeals, brought while the plaintiff was a prisoner, which were dismissed on the ground that they were frivolous, malicious, or failed to state a claim." *Andrews v. King*, 398 F.3d 1113, 1116 n.1 (9th Cir. 2005) (internal quotations omitted). "[T]he statutory language is clear—if a case was not dismissed on one of the specific

---

[8] The district court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (internal quotation marks and citations omitted) (granting request to take judicial notice in § 1983 action of five prior cases in which plaintiff was pro se litigant). Therefore, Defendants' request that the Court take judicial notice of Sekerke's pleadings in five prior civil actions as well as the Court's dockets and orders of dismissal in those cases pursuant to Fed. R. Civ. P. 201(b) is granted.

1  enumerated grounds, it does not count as a strike under § 1915(g)." *Harris v. Harris*, 935

2  F.3d 670, 673 (9th Cir. 2019); *see also Ray v. Lara*, 31 F.4th 692, 697 (9th Cir. 2022).

3  Thus, when determining whether prior dismissals count, courts must "look to the

4  substance of the dismissed lawsuit," and ask whether the dismissal 'rang the PLRA bells

5  of frivolous, malicious, or failure to state a claim.'" *El-Shaddai v. Zamora*, 833 F.3d 1036,

6  1042 (9th Cir. 2016) (citation omitted). The focus is not on "how the district court labelled

7  or styled the dismissal." *Harris*, 935 F.3d at 673 (citing *El-Shaddai*, 833 F.3d at 1047); *see*

8  *also Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013) (noting that courts look to "the

9  dismissing court's action and the reasons underlying it .... [T]he procedural mechanism or

10  Rule by which the dismissal is accomplished, while informative, is not dispositive."

11  (internal citation omitted)). Rather, the Court must evaluate whether "all the claims in a

12  given suit satisfy the enumerated grounds for strikes," because "partial dismissals of even

13  one claim for a non-qualifying reason will save an entire case from constituting a strike."

14  *Harris,* 935 F.3d at 674 (citing *Washington v. Los Angeles Cnty. Sheriff's Dep't*, 833 F.3d

15  1048, 1057 (9th Cir. 2016)). "A defendant challenging a plaintiff's IFP status bears the

16  initial burden of showing through documentary evidence that a plaintiff had three prior

17  strikes." *Id.* at 673 (citing *Andrews*, 398 F.3d at 1118–20). "If a defendant presents a prima

18  facie case, then 'the burden shifts to the plaintiff to persuade the court that § 1915(g) does

19  not apply.'" *Id.* (citing *Andrews*, 398 F.3d at 1116).

20  Here, Defendants claim the following civil actions, all filed by Sekerke while

21  incarcerated and prior to the filing of this case, constitute "strikes" under § 1915(g):  (1)

22  *Sekerke v. Morris, et al.*, S. D. Cal. Civil Case No. 3:11-cv-01912-JAH-BGS ("*Morris*");

23  (2) *Sekerke v. Glynn, et al.*, S.D. Cal. Civil Case No. 3:11-cv-01914-WQH-JMA ("*Glynn*");

24  (3) *Sekerke v. Kemp, et al.*, S.D. Cal. Civil Case No. 3:11-cv-02688-BTM-JMA ("*Kemp*");

25  (4) *Sekerke v. Gonzalez, et al.*, S.D. Cal. Civil Case No. 3:15-cv-00573-JLS-WVG

26  ("*Gonzalez*"); and (5) *Sekerke v. Hernandez (Silva), et al.*, S.D. Cal. Civil Case No. 3:09-

27  / / /

28  / / /

cv-00360-JAH-JMA ("*Silva*").[9] Sekerke opposes claiming he has "not had 3 strikes for 1983 complaints that have been dismissed for failure to state a claim," and argues that in fact, two of the cases Defendants claim qualify as "strikes" were instead "settled." *See* Opp'n at 2.

This Court takes judicial notice of the cases and court records proffered by Defendants which show that while *Morris* and *Glynn* were both dismissed based on Sekerke's failure to state a claim upon which § 1983 relief could be granted, *see* Defs.' List of Evidence ("LOE") in Supp. of Mot. to Dismiss, ECF No. 14-2, Ex. H at 103–113 & Ex. I at 118, I-3 at 131; neither *Kemp*, *Gonzalez*, or *Silva* were dismissed on grounds that they were "frivolous, malicious, or failed to state a claim." 28 U.S.C. § 1915(g); *Andrews*, 398 F.3d at 1116 n.1; *Harris*, 935 F.3d at 674.

Specifically, while Defendants point to a June 21, 2013 partial judgment of dismissal in *Kemp* based on Sekerke's failure to prosecute after certain claims against several Defendants were found insufficient as alleged to state a claim upon which § 1983 relief could be granted, *see* Defs.' LOE, Ex. K-2 at 229, the full docket of the proceedings in *Kemp* further shows that the three remaining Defendants filed an Answer, *id.*, Ex. K at 144, and the case later settled before trial. *Id.* at 147. Because the "case as a whole" was not dismissed for a "qualifying reason under the [PLRA]" as set forth in the statutory language / / /

---

[9] In their Reply, Defendants point to a sixth case, *Sekerke v. Hoodenpyle*, S.D. Cal. Civil Case No. 3:19-cv-00035-WQH-JLB, filed on January 7, 2019, and dismissed for failing to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *See* Defs.' Reply at 4. The Court finds that while this case *does* qualify as a strike as defined by 28 U.S.C. § 1915(g), it was not dismissed until March 16, 2021—more than a year *after* Sekerke initiated this action and moved to proceed IFP. *See id.*, ECF Nos. 36, 42, 43; *Sekerke v. Hoodenpyle*, No. 19-CV-35-WQH-JLB, 2021 WL 973565, at *6 (S.D. Cal. Mar. 16, 2021) (adopting Report & Recommendation to grant Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) as barred by the statute of limitations); *Belanus v. Clark*, 796 F.3d 1021, 1053 (9th Cir. 2015) (dismissals for failure to state a claim because the claims were time-barred may be counted as strikes pursuant to 28 U.S.C. § 1915(g). Thus, while Sekerke *now* has three strikes and may not file any further civil actions or appeals IFP unless he is danger of serious physical injury as the time of filing, he did not yet have three "*prior* civil actions or appeals" dismissed  strikes when he first sought leave to proceed IFP in this case on June 5, 2020. *See* 28 U.S.C. § 1915(g) (emphasis added).

of § 1915(g) itself, *Kemp* does not count as a strike. *Harris*, 935 F.3d at 674; *Washington*, 833 F.3d at 1057.

The full docket of the proceedings in both *Gonzalez* and *Silva* demonstrate those cases do not count as strikes under Section 1915(g) either. *See* Defs.' LOE, Ex. M at 234–247, Ex. F at 21–30, Ex. F-2 at 58–62. In *Gonzalez,* the Court granted Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56, finding Sekerke "failed to show any genuine issue of material fact which would allow a trier of fact to conclude that Defendant used excessive force in violation of his rights under the Eighth Amendment." *Sekerke v. Gonzalez*, No. 3:15-CV-00573-JLS-WVG, 2018 WL 1156426, at *1 (S.D. Cal. Mar. 5, 2018); *see also El-Shaddai*, 833 F.3d at 1044 (concluding that district court's entry of summary judgment did not qualify as a strike under § 1915(g) because it "considered evidence submitted by the parties in reaching its decision," and did not "dispose[] of [the case] because the complaint was frivolous, malicious, or failed to state a claim."). The same is true for *Silva*. *See Sekerke v. Silva,* No. 3:09-CV-0360-JAH-JMA, 2010 WL 4922523, at *7 (S.D. Cal. Nov. 29, 2010) (concluding that "no genuine issue of material fact exists with respect to whether Defendant Silva was 'deliberately indifferent' to Plaintiff's serious medical needs in violation of the Eighth Amendment" and granting summary judgment pursuant to Fed. R. Civ. P. 56).

Thus, because the Court finds Sekerke had only two prior civil actions or appeals dismissed on grounds that they were frivolous, malicious, or failed to state a claim before he filed suit and sought to proceed IFP in this case on June 8, 2020, and "[a] strike-call under Section 1915(g) [] hinges exclusively on the basis for the dismissal," *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1724–25 (2020), the Court declines to revoke his IFP status pursuant to 28 U.S.C. § 1915(g) and denies Defendants' motion to dismiss this civil action based on Sekerke's history as an "unsuccessful serial litigant." *See* Defs.' P&As at 11.

## I.   Sekerke's Prayer for Punitive Damages Need Not be Stricken

Finally, Defendants contend Sekerke's Amended Complaint "includes allegations that are immaterial, impertinent, and scandalous," and that to the extent he fails to allege

"adequate facts to support malicious, oppressive or reckless disregard of [his] rights," his prayer for $100,000 in punitive damages must be stricken. *See* Defs.' P&As at 30–31.

"The Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a motion to strike is to avoid the expenditure of time and money that will arise from litigating "spurious issues." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010); *Taylor v. Quall*, 471 F. Supp. 2d 1053, 1058–59 (C.D. Cal. 2007). "Rule 12(f) ... does not authorize a district court to strike a claim for damages on the ground that such damages are precluded as a matter of law." *Whittlestone*, 618 F.3d at 971. Moreover, punitive damages are available in a Section 1983 action if "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

Here, the Court rejects Defendants' request to strike Sekerke's prayer for punitive damages on grounds that his Amended Complaint includes "immaterial, impertinent, and scandalous" allegations, *see* Defs.' P&As at 30, because they fail to identify which of his claims qualify. The Court further rejects Defendants argument that Sekerke is not entitled to punitive damages with respect to any of his causes of action because his allegations do not rise to the level of malicious or oppressive conduct, or reckless disregard. *Id.*

The Court has found that at least with respect to Sekerke's Ad-Seg conditions of confinement claims as alleged in Count 1 against Lt. Arkwright, he *has* alleged facts sufficient to plead both a plausible claim for relief under both the Eighth and Fourteenth Amendments, both which require allegations of deliberate indifference. *See supra*, §§ IV.C, IV.D; *see also Jackson v. Blain*, No. CV 20-1932-SVW (KS), 2020 WL 7379139, at *9 (C.D. Cal. Nov. 12, 2020) (denying Rule 12(f) motion where pro se prisoner's factual allegations, when taken as true and construed in the light most favorable to him, were "sufficient to raise a reasonable inference that Defendants acted with reckless or callous indifference to [his] Eighth Amendment rights.").

Therefore, the Court denies Defendants' motion to strike Sekerke's prayer for punitive damages pursuant to Fed. R. Civ. P. 12(f).

## V.   CONCLUSION AND ORDER

For all the reasons discussed, the Court grants in part and denies in part Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 8, 12(b)(6), and 12(f) (ECF No. 14). Specifically, the Court dismisses all claims for damages alleged against Defendants in their official capacities, all claims for injunctive relief as moot, Sekerke's Eighth Amendment disciplinary diet claims as alleged against Defendants Cross and Aguirre in Count 2, and his Eighth Amendment failure to protect claims as alleged against Defendant Arkwright in Count 3. However, the Court Orders Defendant Arkwright to serve and file an Answer to Sekerke's Eighth and Fourteenth Amendment conditions of confinement claims as alleged in Count 1 within the time provided by Fed. R. Civ. P. 12(a)(4)(A).

The Court further directs the Clerk of the Court to terminate Defendants Olsen, Lawson, Cross, and Aguirre as parties to this action based on Sekerke's failure to state any plausible claim for relief against them, and to modify the docket to reflect Sekerke's current address as follows:

Keith Wayne Sekerke
BP-1899
Valley State Prison
P.O. Box 92
Chowchilla, CA 93610.

**IT IS SO ORDERED**.

Dated: May 12, 2022

_____

Honorable Jinsook Ohta
United States District Judge