UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH WAYNE SEKERKE,<br><br>                               Plaintiff,<br>vs.<br><br>A. ARKWRIGHT,<br><br>                              Defendant. | Case No.: 3:20-cv-1045-JO-AHG<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

      On June 5, 2020, Plaintiff Keith Sekerke, currently proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983. *See* Dkt. 1 ("Compl."). In his complaint, Sekerke claims that Lieutenant Adam Arkwright violated his constitutional right to humane conditions of confinement while he was housed at the San Diego County Jail ("SDCJ"). *Id.* On March 9, 2023, Lieutenant Arkwright filed a motion

for summary judgment. Def.'s Mot. Summ. J., Dkt. 75.[1]  For the reasons discussed below, the Court grants Defendant's motion for summary judgment.

## I. BACKGROUND

Plaintiff filed this suit to complain of inhumane conditions that he suffered while detained in the Administrative Segregation[2] Unit ("Ad-Seg") of the San Diego County Jail.[3]  During his detention, the County placed him in Ad-Seg on two separate occasions. The County first housed Sekerke in Ad-Seg from July 8, 2019, to August 16, 2019, while he was a pretrial detainee. Frushon Decl. ¶ 21.  He was convicted of his charge on September 12, 2019, and, subsequently, placed in Ad-Seg a second time from November 27, 2019, to March 10, 2020.  LOE Ex. A, Sekerke Dep. 26:10-18; LOE Ex. B; Frushon Decl. ¶ 21.  He alleges that, during both of his stays in Ad-Seg, he suffered harm as a result of the deplorable conditions caused by mentally ill inmates being "warehoused" in the Ad-Seg units. Compl. ¶¶ 5, 8.  He asserts that these mentally ill inmates spread feces and urine across the prison's walls, tiers, and showers and constantly banged on metal sinks, desks, and bunks, creating a cacophony of noise for significant periods of time. *Id.* at ¶¶ 5, 9. Defendant, on the other hand, contends that "incarcerated persons with acute mental health needs [were] housed in different areas of the jail from the module in which Plaintiff was housed." Arkwright Decl. ¶ 20.

Plaintiff contends that Lieutenant Arkwright was aware of the inhumane conditions

---

[1] On March 13, 2023, the Court notified Plaintiff of the requirements for opposing summary judgment pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc), and *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc). Dkt. 76.

[2] Ad-Seg is a separate and secure housing space within the Jail.  It is used to house inmates "who are determined to be prone to activity or behavior that is criminal in nature or disruptive to facility operations." Frushon Decl. ¶ 10.

[3] "A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000); *See also McElyea v. Babbitt,* 833 F.2d 196, 197 (9th Cir. 1987).

that Plaintiff suffered during his first Ad-Seg placement but failed to remedy the situation. Sekerke claims that, on July 16, 2019, he told Arkwright about noisy and unsanitary conditions while Arkwright was touring the San Diego County Jail. LOE Ex. A, Sekerke Depo 67:13–69:5. At the time of this conversation, Arkwright worked at the George Bailey Detention Facility in Otay Mesa and had no position or authority at the SDCJ. Arkwright Decl. ¶¶ 4, 11, 12. Because Arkwright was about to start a new position as the SDCJ Jail Population Management Unit ("JPMU") Lieutenant, he accompanied the outgoing JPMU Lieutenant Coyne to shadow her as she responded to a complaint by Sekerke regarding his Ad-Seg placement. *Id.* at ¶ 14. Sekerke testifies that, during this conversation, Arkwright responded to his complaints by saying that there would be no changes to the way that inmates were housed at the SDCJ. Compl. ¶ 10; LOE Ex. A, Sekerke Depo 69:6–18. While Defendant disputes that he responded in this fashion, both parties agree that this exchange included a discussion of noisy conditions. Arkwright Decl. ¶ 18; LOE Ex. A, Sekerke Depo 67:13–69:5.

Before Arkwright assumed his new position at the San Diego County Jail, the appropriate officers had already denied Sekerke's grievances regarding his first Ad-Seg stay. On July 17, Lieutenant Coyne denied Sekerke's grievance challenging his placement in Ad-Seg on account of Sekerke's previous violations of prison rules and his disrespectful attitude towards staff. LOE Ex. E at 8. Plaintiff appealed, and Captain Kneeshaw denied the appeal of the grievance on July 18. *Id.* at 10. Arkwright started his new position at the SDCJ on July 19, the day after this final denial. Arkwright Decl. ¶ 12. At no point after Kneeshaw's final grievance denial did Sekerke file additional conditions grievance appeals that reached Arkwright. *See generally* LOE Ex. E. Further, there is no valid record evidence which indicates that Plaintiff had further conversations with Arkwright about the conditions of his first stay,[4] nor are there facts suggesting that Arkwright otherwise

---

[4] While Plaintiff, in his "Declaration in Opposition to Defendant's Motion for Summary Judgment," asserts that he raised these conditions issues "with Arkwright at later visits by him," he does

received information that Sekerke faced a continued risk of harm during this first stay as a result of poor Ad-Seg conditions. *Id.*

Plaintiff alleges that his second placement in Ad-Seg was marked by the same deplorable conditions but that he still received no relief. In order to challenge his placement in the Unit and to seek improved conditions, Plaintiff submitted a grievance on January 19, 2020. LOE Ex. F at 1. In the grievance, Sekerke stated, among other things, "I have been subjected to harsh conditions, retaliation by staff, and unfair exposure to severely mentally ill who throw feces and urine, and my own mental health is deteriorating." *Id.* In response to this grievance, Sergeant Jackson, an officer in the housing conditions department, physically inspected Plaintiff's claims regarding mentally ill inmates, feces, and excessive noise. Jackson Decl. ¶ 15. Sergeant Jackson's job duties included monitoring and fixing unsafe and unsanitary conditions within the housing units. *Id.* at ¶ 3. Jackson then responded to Sekerke's grievance, stating "[a]s it pertains to your exposure to mentally ill inmates, I want to inform you that . . . there is no one in your assigned housing meeting the requirements for acute psychiatric services." LOE Ex. F at 3.

Arkwright, the San Diego JMPU Lieutenant at this time, ultimately received Plaintiff's complaints about the conditions of his second Ad-Seg stay through the grievance appeal process. After receiving the denial from Jackson, Plaintiff appealed[5] his grievance to both Lieutenant Buchanan, a "Watch Commander," and Defendant Arkwright. *Id.* at 8–9. In these appeals, Sekerke primarily argued against his Ad-Seg placement but also briefly

---

not include necessary information about when these conversations took place or what was discussed—whether these discussions concerned his first or second Ad-Seg stay, and what was relayed, if anything, about the conditions. Thus, Sekerke's conclusory statement about further conversations from Arkwright is too vague to create a genuine dispute of fact. *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), as amended (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.") (citing *Hansen v. United States,* 7 F.3d 137, 138 (9th Cir. 1993); *United States v. One Parcel of Real Property,* 904 F.2d 487, 492 n. 3 (9th Cir. 1990)).

[5] Grievance number 204000121 was routed to Lieutenant. Buchanan, and number 204000123 to Arkwright. LOE Ex. F 8-9.

addressed the conditions in the Unit by complaining as follows: "subjected [sic] to severely mentally ill, banging, yelling and feces is [] unconstitutional." *Id.* As the JPMU Lieutenant, Arkwright was tasked with assigning and overseeing inmate placement decisions such as whether inmates were housed in Ad-Seg or in General Population. Arkwright Decl. ¶ 7. Neither he, nor anybody else in the JMPU section, was responsible for supervising, monitoring, or remedying the housing conditions within the various SDCJ units; these responsibilities fell within the purview of the housing conditions chain of command. *Id.* at ¶¶ 7, 10; Jackson Decl. ¶ 11. Nevertheless, upon receiving Sekerke's appeal concerning both the placement decision and the inhumane conditions, Arkwright followed up on both concerns. LOE Ex. F at 11. He responded to Sekerke's concerns that mentally ill inmates were causing unsanitary conditions by reviewing Sergeant Jackson's lower-level response which stated that "[a]s it pertains to your exposure to mentally ill inmates, I want to inform you that . . . currently there is no one in your assigned housing meeting the requirements for acute psychiatric services." *Id.* at 3. Based on Jackson's response and Arkwright's independent knowledge that Sergeant Jackson routinely visited and monitored the SDCJ housing units, including Ad-Seg, for unsafe and unsanitary conditions, he ultimately determined that Sekerke's assertions regarding the conditions in Ad-Seg were unfounded. *Id.*; *See also* Arkwright Decl. ¶ 35.

Plaintiff filed this case on June 6, 2020, naming Lieutenant Arkwright, Deputy Olsen, and Deputy Lawson as parties. While Sekerke had previously filed a lawsuit[6] against Deputy Olsen for retaliation, he expressly stated that he was "not seeking relief for a retaliation claim" as part of this case. Dkt. 1 at 4. On September 2, 2020, and May 12, 2022, the Court issued orders that dismissed all claims and defendants except the Fourteenth and Eighth Amendment conditions of confinement claims against Lieutenant Arkwright. Dkts. 4, 22. Defendant Arkwright, in filing this motion for summary judgment,

---

[6] On January 7, 2019, Plaintiff filed a lawsuit alleging retaliation against Deputy Olsen, *Sekerke v. Leo, et al.*, 3:19-cv-00034-JO-RBB, which predated the filing of the instant case.

seeks to dismiss the two remaining claims against him.

## II.  LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  While a plaintiff has the burden of proof at trial, the moving party bears the initial burden of informing the court of the basis for their motion and of identifying the portions of the record that demonstrate an absence of a genuine dispute of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If defendant meets his initial responsibility, the burden then shifts to the plaintiff to establish a genuine dispute as to any material facts that exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of this factual dispute, the plaintiff must present evidence in the form of affidavits and/or admissible discovery material to support his contention that a genuine dispute of material fact exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11.  "A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000); *See also McElyea v. Babbitt,* 833 F.2d 196, 197 (9th Cir. 1987).

When handling *pro se* cases, district courts must "construe liberally motion papers and pleadings filed by *pro se* inmates and . . . avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).  However, if plaintiff "fails to properly support an assertion of fact or fails to properly address [Defendant's] assertion of fact, as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . .." Fed. R. Civ. P. 56(e)(2).  Plaintiff, as the opposing party,

may not rest solely on conclusory allegations of fact or law. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).

### III.  EVIDENTIARY OBJECTIONS

First, Defendant objects to the admissibility of certain statements made in Plaintiff's "Declaration in Opposition to Defendant's Motion for Summary Judgment" on the grounds that they constitute improper fact testimony containing legal conclusions and statements not based on personal knowledge. Def's. Objs. to Pl's. Opp'n. at 1–8, 12–13. Plaintiff, a *pro se* inmate, submitted this single document in response to Defendant's summary judgment motion. This document contains both fact testimony and legal arguments, including arguments that Arkwright knew of inhumane conditions within Ad-Seg and intentionally decided not to remedy them, and assertions that Arkwright submitted false testimony in support of his motion. *Id.* at 5, 12. The Court construes Plaintiff's Declaration in Opposition as an affidavit in part and an opposition brief in part. Considering the dual purpose of this document and the liberal standards for analyzing *pro se* submissions, the Court overrules Defendant's objection to statements they identify on the grounds that they are improper fact testimony. *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) ("We have . . . held consistently that courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly.") (quoting *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010); *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985) (stating that courts should "treat the opposing party's papers more indulgently than the moving party's papers") (citing *Doff v. Brunswick Corp.*, 372 F.2d 801, 804 (9th Cir. 1966)). Instead, the Court will parse which parts of the document offer legal argument and which offer fact testimony and perform its gatekeeping function of only considering admissible evidence based on personal knowledge.

Second, Defendant raises relevance objections to Sekerke's statements concerning (1) various officers' retaliatory reasons for placing him in Ad-Seg and (2) a March 2020 incident in which Plaintiff was "gassed" with urine after being removed from Ad-Seg. *Id.* at 9-11. The Court sustains these objections because both categories of information are

irrelevant to whether Arkwright was deliberately indifferent to Plaintiff's poor housing conditions while in Ad-Seg. First, whether various officers placed Plaintiff in Ad-Seg for improper or retaliatory reasons is not relevant to whether Arkwright was deliberately indifferent to the poor conditions within the Unit. Second, the "gassing" incident, in which a fellow inmate threw a bottle of urine into his cell, is not relevant because it took place after Plaintiff was released from Ad-Seg—the current litigation only touches on Arkwright's knowledge and response to conditions within Ad-Seg. The Court thus sustains Defendant's objections to statements which only touch on the alleged retaliatory housing placement and the gassing event which took place after his removal from Ad-Seg.

Finally, Defendant raises hearsay objections to Plaintiff's testimony regarding the statements that Arkwright made in his grievance appeal responses and while visiting Sekerke during his first Ad-Seg stay. Even if these out-of-court statements were offered for their truth as opposed to some other purpose, the Court would overrule these objections because the statements were made by a party opponent. Fed. R. Evid. § 801(d)(2).

## IV. DISCUSSION

Plaintiff alleges that he suffered from unconstitutional conditions of confinement during his two stays in Ad-Seg and seeks to hold Defendant Arkwright accountable for knowing about these conditions yet failing to respond. While "the Constitution does not require comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), conditions within a prison can be actionable if they "result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes*, 452 U.S. at 347). Courts have held that certain conditions of confinement, such as excessive noise and unsanitary conditions, fall short of constitutional requirements. *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996) (holding that the Constitution requires inmates to "be housed in an environment that, if not quiet, is at least reasonably free of excess noise"); *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995) ("[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment.").

Pretrial detainees claiming unconstitutional conditions of confinement must establish that an official acted with deliberate indifference under the Fourteenth Amendment. To do so, four elements must be satisfied: "(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries." *Castro v. Cnty. Of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016). With respect to the *mens rea* requirement of Fourteenth Amendment deliberate indifference, a Plaintiff must show "more than negligence but less than subjective intent or awareness—something akin to reckless disregard." *Castro*, 833 F.3d at 1071; *Norbert v. City & Cnty. of San Francisco*, 10 F.4th 918, 928 (9th Cir. 2021). In other words, the "defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Castro*, 833 F.3d at 1071.

Post-conviction incarcerated individuals must also prove deliberate indifference to poor prison conditions under the Eighth Amendment. "The Eighth Amendment's deliberate indifference standard involves both an objective and a subjective prong. First, like the Fourteenth Amendment, the alleged deprivation must be, in objective terms, 'sufficiently serious'" to rise to the level of a constitutional violation. *Farmer*, 511 U.S. at 834. Second, "the official must both know of and disregard this serious risk." *Id.* at 837. In other words, the evidence must show that the official failed to act even though they (1) were aware of facts from which the inference could be drawn that a serious risk of unconstitutional conditions existed if the prisoner's grievances were unaddressed, and (2) actually drew that inference. *Id*. If the evidence merely shows that a Defendant should have been aware of the risk of harm, but was not, then they have not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. Cnty. of Washoe*, 290 F.3d 1175,

1188 (9th Cir. 2002) (overruled on other grounds by *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)).

### A. Conditions Posing a Substantial Risk of Serious Harm

Here, Plaintiff has raised a triable issue regarding his contention that he was incarcerated under unconstitutional conditions which posed a sufficiently serious risk to his health. The allegations of his verified complaint, which the Court can treat as evidence, create a triable issue that he suffered from excessively noisy conditions and exposure to fecal matter during both of his Ad-Seg placements. *Rico v. Ducart*, 980 F.3d 1292, 1298 (9th Cir. 2020) (noting that existing Ninth Circuit precedent recognizes the right to be free from excess noise); *Johnson v. Lewis*, 217 F.3d 726, 731–32 (9th Cir. 2000) (holding that prolonged exposure to feces and a lack of proper sanitation falls short of constitutional standards). Defendant does not dispute that such conditions would violate the objective prong under both the Fourteenth and Eighth Amendments. The Court therefore examines below whether Arkwright was deliberately indifferent to these conditions under Fourteenth Amendment standards during Plaintiff's first Ad-Seg stay and under the Eighth Amendment during his second stay.

### B. Fourteenth Amendment Deliberate Indifference

The Court turns to whether Plaintiff has created a triable issue that Arkwright's actions were objectively unreasonable and that he demonstrated reckless disregard to Plaintiff's conditions during this first Ad-Seg stay in violation of the Fourteenth Amendment.

Here, Plaintiff has not raised a triable issue that Arkwright acted unreasonably in assuming that Sekerke's concerns about his first Ad-Seg stay had been appropriately handled by the assigned officers. The undisputed facts show that when Arkwright spoke with Plaintiff in July 2019 about the conditions of his first stay, he was merely shadowing Lieutenant Coyne in preparation for taking over her position and observing as she handled Plaintiff's grievance. Arkwright Decl. ¶ 14. Because he had no official position at the San Diego County Jail at the time of the visit, Arkwright did not (and could not) take any action

in response to what Plaintiff told him about the Ad-Seg conditions. *Id.* at ¶ 12. By the time that Arkwright began working at San Diego County Jail, Lieutenant Coyne had already responded to Sekerke's grievance regarding his placement and Captain Kneeshaw had denied his appeal. *Id.* at ¶ 27, 29. While Sekerke filed additional grievances regarding both his Ad-Seg placement and conditions of confinement, none of them reached Arkwright because Sekerke did not appeal them past the first level. LOE Ex. C at 8–21. Further, there is no valid evidence in the record indicating that Plaintiff had further conversations with Arkwright informing him that these dangerous conditions persisted and were not appropriately resolved by the grievance process. *See supra*, n.4. Plaintiff therefore fails to create a triable issue that Arkwright received information to indicate that Sekerke faced a continued risk of harm as a result of poor Ad-Seg conditions. *See generally* LOE Ex. E. In other words, by the time Arkwright assumed his position as JPMU Lieutenant at SDCJ, Plaintiff's grievance was closed, and he had no reason to believe that further action was necessary to remedy any unsafe conditions. *See Grizzle v. Cnty. of San Diego*, 2022 WL 2805587, *6–7 (S.D. Cal. July 18, 2022) (holding that officer was not objectively unreasonable in declining to investigate prior inmate complaint because officer was not made aware of a continuing risk to inmate safety). Plaintiff has not raised a triable issue that Arkwright acted unreasonably and in reckless disregard to his safety; the Court, thus, finds that Lieutenant Arkwright is entitled to summary judgment on Plaintiff's Fourteenth Amendment deliberate indifference claim.

**C. Eighth Amendment Deliberate Indifference**

The Court next examines under Eighth Amendment standards whether Plaintiff has created a triable issue that Lieutenant Arkwright knew Sekerke faced serious risks during his second Ad-Seg placement and failed to act.

Contrary to Defendant's arguments, Plaintiff raises a triable issue that Arkwright knew of a risk of unsafe and unsanitary conditions within Ad-Seg. Evidence in the record indicates that Arkwright was twice informed—first, when Plaintiff spoke to Arkwright during his July 2019 tour of the facility, and second, when he received Plaintiff's January

11

3:20-cv-1045-JO-AHG

2020 grievance appeal—that the SDCJ Ad-Seg was excessively loud and unsanitary. LOE Ex. A at 67:13–69:5; LOE Ex. F at 9.  Evidence that Arkwright received these two complaints about the same deplorable conditions are sufficient to create a triable issue that Arkwright was aware of the substantial health and safety risk created by the Ad-Seg conditions.

While Plaintiff creates a triable issue regarding Arkwright's knowledge, Plaintiff's Eighth Amendment claim ultimately fails because the undisputed facts establish that Arkwright did not fail to act and, in fact, took appropriate responsive action after learning that Plaintiff may be suffering from excessive noise and exposure to feces.  Prison officials are not deliberately indifferent to a known risk or serious condition of confinement when their response to this risk is reasonable and appropriate. *Farmer*, 511 U.S. at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").  Even a minimal response, such as reviewing and approving the findings and conclusions of lower-level officials, can constitute a reasonable response. *See Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).  In *Peralta*, the plaintiff complained that a prison's chief medical officer ("CMO") was deliberately indifferent to his dental needs because he merely signed off on the findings of two lower-level dentists without conducting his own independent investigation of the plaintiff's dental needs. *Id.* at 1086. The court found no Eighth Amendment violation, holding that the CMO had acted reasonably in reviewing the findings of the staff dentists and affirming their treatment recommendations because the dentists had a level of expertise that the CMO did not and because they personally investigated Plaintiff's claims. *Id.* at 1086–87.  Further, whether an official's actions and responses to a known risk are reasonable will depend on the scope of their responsibilities and duties. *See Lemire v. Cal. Dep't Corrections & Rehab.*, 726 F.3d 1062 (9th Cir. 2013).  In *Lemire*, the plaintiff alleged that five supervisory prison guards were deliberately indifferent in calling an impromptu staff meeting which removed all prison guards from a particular housing building, leaving it completely unsupervised.

*Id.* at 1068. One of the five supervisory guards was staffed in, and responsible for, an entirely different building. *Id.* at 1080. The Ninth Circuit held that because she had no affirmative duty to monitor or remedy an unsafe situation in a building other than her own, her lack of action in preventing the conditions which led to an inmate's suicide did not amount to deliberate indifference. *Id.*

Here, the undisputed evidence shows that, after receiving Sekerke's grievance, Arkwright took reasonable responsive action by investigating and relying on the conclusion of an officer with direct responsibility for housing conditions. Upon receiving Plaintiff's appeal about the feces and noise in his Ad-Seg unit, Arkwright reviewed Sergeant Jackson's first-level response to Plaintiff's grievance. While Arkwright's responsibilities within the JPMU did not include housing conditions, he knew that Jackson's job duties included physically inspecting, monitoring, and fixing unsafe and unsanitary conditions within the housing units. Arkwright Decl. ¶ 35. In reviewing Jackson's response, Arkwright learned that, in responding to Sekerke's complaints, Jackson evaluated the mental health status of the other Ad-Seg inmates and ultimately determined that "there is no one in [Sekerke's] assigned housing meeting the requirements for acute psychiatric services." LOE Ex. F at 3. Like in *Peralta*, Lieutenant Arkwright acted reasonably in taking minimal, yet reasonable action in reviewing Plaintiff's grievance appeal and relying on the findings of a lower-level official who had personal knowledge and direct responsibility over these of the Ad-Seg unit conditions. Moreover, like the building supervisor in *Lemire,* Arkwright was not within the housing conditions chain of command and therefore had no responsibility or authority to fix the Ad-Seg conditions. Given his lack of responsibility for addressing the conditions of the Unit, his reliance on the report of someone within that unit who had that responsibility was reasonable. Plaintiff therefore has not created a trial issue that Arkwright consciously disregarded a risk of harm by deferring to the findings of the appropriate sergeant in charge of housing conditions. The undisputed facts establish that Arkwright took some, reasonable responsive action in doing so. *Id.* at 11; Arkwright Decl. ¶ 37. Because the Court concludes that no reasonable jury

could determine that Arkwright was deliberately indifferent to Sekerke's conditions complaint, the Court grants Defendant's summary judgment on the Eighth Amendment deliberate indifference claim.

**D. Qualified Immunity and Exhaustion**

Because no genuine issue exists regarding whether Lieutenant Arkwright was deliberately indifferent under the Fourteenth and Eighth Amendments, the Court does not reach the issues of qualified immunity and exhaustion of administrative remedies.

## V. CONCLUSION AND ORDER

For the above reasons, the Court GRANTS Defendant's motion for summary judgment, Dkt. 75, pursuant to Fed. R. Civ. P. 56(a). The Court further DIRECTS the Clerk of the Court to enter judgment in favor of Defendant Arkwright and to close the case.

**IT IS SO ORDERED**.

Dated:   September 28, 2023

_____
Honorable Jinsook Ohta
United States District Judge